**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I. CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

Douglas Peters Trustee, Douglas Peters, Irwin Peters
Plaintiff

Case # ____________________
Judge ____________________

vs.
Comerica Bank, Onity Mortgage Corporation
Defendant

---

**II. AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III. TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

NOT A CERTIFIED COPY

COMPOSITE EXHIBIT
2

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☐ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

NOT A CERTIFIED COPY

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V. NUMBER OF CAUSES OF ACTION: [ ]**
(Specify)

3

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

NOT A CERTIFIED COPY

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Gregory R Elder
Attorney or party

Fla. Bar # 54006
(Bar # if attorney)

Gregory R Elder
(type or print name)

09/02/2026
Date

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.

DOUGLAS PETERS, TRUSTEE OF THE
DOUGLAS PETERS DECLARATION OF
TRUST DATED MAY 6, 2004

DOUGLAS PETERS

IRWIN PETERS

Plaintiffs

COMERICA BANK

ONITY MORTGAGE CORPORATION

Defendants.
_____________________________/

NOT A CERTIFIED COPY

**COMPLAINT WITH JURY DEMAND**

Plaintiffs, Douglas Peters, Trustee Of The Douglas Peters Declaration Of Trust Dated May 6, 2004, Doug Peters and Irwin Peters, by and through the undersigned counsel, hereby file this Complaint and sue Defendants, Comerica Bank and Onity Mortgage Corporation, and alleges and avers as follows:

**THE PARTIES**

1. Plaintiff, Douglas Peters, Trustee of The Douglas Peters Declaration Of Trust Dated May 6, 2004 ("Peters Trustee"), is the trustee of The Douglas Peters Declaration Of Trust Dated May 6, 2004, over the age of eighteen and *sui juris,* a citizen of the State of Florida, and brings this action as Trustee.

2. Plaintiff, Douglas Peters ("Doug Peters"), is over the age of eighteen and *sui juris,* a citizen of the State of Florida, and also brings this action in an individual capacity.

3. Plaintiff, Irwin Peters ("Irwin Peters"), is over the age of eighteen and *sui juris,* a citizen of the State of Florida, and brings this action in an individual capacity. (Doug Peters, Irwin Peters and Peters Trustee are sometimes referred to collectively, as "Plaintiffs").

4. Irwin Peters is Doug Peter's father.

5. Linda Peters was married to Irwin Peters and the mother of Doug Peters, and passed away on April 2, 2020.

6. Defendant, Comerica Bank ("Defendant Comerica") is a foreign profit corporation, with a principal address at 1717 Main Street, Dallas, Texas 75201, and a mailing address of 1717 Main Street, MC 6506, Dallas TX 75201.

7. Defendant, Onity Mortgage Corporation ("Defendant Onity") is a foreign profit corporation, with a principal address at 2000 Midatlantic Road, Suite 410-A, Mount Laurel, NJ 08054, and a mailing address of 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

**<u>JURISDICTION AND VENUE</u>**

8. This is an action for damages, which exceeds $50,000.00, exclusive of costs, interest, and attorneys' fees.

9. Defendant Comerica is subject to personal jurisdiction in this Court because: a) it is registered to due business in the State of Florida; b) it is a federally insured bank and regularly engages in substantial and not isolated banking activity in Florida, including, but not limited to, lending money to Florida citizens and placing mortgages on Florida real property to secure its loans, providing depository accounts in Florida to Florida citizens, and it has multiple branch locations in Florida; c) it made a federally related mortgage loan to Irwin Peters which was secured by a mortgage on real property located in Florida; and d) it committed violations of federal laws, described more fully below, in Florida.

NOT A CERTIFIED COPY

10. Venue is proper in Palm Beach County, Florida against Defendant Comerica because: a) it has a branch locations in Palm Beach County, Florida; b) it conducts business in Palm Beach County, Florida; c) the causes of action alleged below accrued in Palm Beach County, Florida; and d) it loaned money to Irwin Peters in Palm Beach County, Florida, and placed a mortgage on the real property to secure that loan, which is the subject of this litigation and located in Palm Beach County, Florida.

11. Defendant Onity is subject to personal jurisdiction in this Court because: a) it is registered to due business in the state of Florida; b) it has a mailing address of 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409; c) it maintains an office in Florida; d) it regularly engages in substantial and not isolated activity in Florida regarding servicing of federally related mortgages involving Florida residents and real property in Florida; e) it serviced a federally related mortgage loan to Irwin Peters which was secured by a mortgage on real property located in Florida; and f) it committed violations of federal laws, described more fully below, in Florida.

12. Venue is proper in Palm Beach County, Florida against Defendant Onity because: a) it has a branch locations in Palm Beach County, Florida; b) it conducts business in Palm Beach County, Florida; c) the causes of action alleged below accrued in Palm Beach County, Florida; d) it serviced a federally related mortgage loan to Irwin Peters which was secured by a mortgage on real property located in Palm Beach County, Florida; and e) it committed violations of federal laws, described more fully below, in Palm Beach County, Florida.

**GENERAL FACTUAL BACKGROUND**

13. On January 6, 2011, the Irwin Peters and Linda Peters owned a residential property located at 6023 Le Lac Road, Boca Raton, Florida 33496 (hereinafter the "Property"), which had a residential house situated thereon (hereinafter, the "House").



NOT A CERTIFIED COPY

14. On January 6, 2011, Irwin Peters and Linda Peters and/or Doug Peters and Peters Trustee executed and delivered a promissory note (hereinafter, the "Note") to Comerica, in the original amount of $1,865,000.00, which was a federally related mortgage loan. A copy of the Note is not attached hereto because Plaintiffs do not have a copy of same.

15. Irwin Peters, Linda Peters, Doug Peters and Peters Trustee also executed and delivered to Comerica a Mortgage ("Mortgage") dated January 6, 2011, to secure payment of the Note, which was a federally related mortgage loan. A true, accurate and authenticate copy of the Mortgage is attached hereto as Exhibit A. The Mortgage was recorded on January 24, 2011, in the Official Records Book 24328, Page 0535, which mortgaged the Property.

16. On January 19, 2012, Irwin Peters and Linda Peters, transferred title to the Property to Peters Trustee.

17. Through the years, Doug Peters and/or the Peters Trust timely paid all loan payments owed on the Note.

18. The Mortgage required that the "improvements" on the Property be insured for fire and other hazards.

19. On December 18, 2025, Comerica sent written notice to Irwin Peters, stating that their records showed that there was no hazard insurance on the improvements and that it would buy "forced insurance" for the improvements if Irwin Peters did not purchase insurance himself. A true, accurate and authenticate copy of the notice is attached hereto as Exhibit B.

20. Immediately thereafter, Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters, began telephoning Defendant Comerica using telephone numbers provided by Defendant Comerica, and left multiple messages, but these calls and messages were not returned by Defendant Comerica or anyone. The purpose of these telephone calls was to advise

NOT A CERTIFIED COPY

Defendant Comerica that the House had suffered a catastrophic fire and was nothing but a burned-out shell, and thus there was nothing of tangible value to insure and no need for forced insurance, and more importantly, to obtain a payoff number to payoff the loan immediately.

21. Because Defendant Comerica or anyone else again did not respond to these telephone calls and messages, Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters, faxed a hand-written letter to Defendant Comerica on January 8, 2026 (which was its stated preferred method of communication), stating:

> a. That he had been telephoning Defendant Comerica to discuss the notice, but no one one was answering;
> b. That the Property no longer had the House and was vacant land; and
> c. That he desired to pay off the loan and asked Comerica to call him at a stated number for that purpose.

A true, accurate and authenticate copy of the facsimile and transmission report are attached hereto as Exhibit C.

22. Once again, Defendant Comerica or Defendant Onity did not respond to said fax.

23. Thus, on April 20, 2026, Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters, wired $1,346,791.36 (which was based on the current Comerica Statement) to Comerica, which included in the reference line, "Mortgage Payoff for Doug Peters." A true, accurate and authenticate copy of the wire report is attached hereto as Exhibit D.

24. During that same week of April 20, 2026, Doug Peters had a telephone conversation with a "Trevene," who was an employed and an agent of Defendant Onity and an agent Defendant Comerica, in which he advised again of the destruction of the House, that he had wired the $1,346,791.36 towards the payoff the loan, and that he wanted a confirmation that the amount paid pursuant to the bank statement was the accurate final loan balance.

NOT A CERTIFIED COPY

25. On April 28, 2026, Doug Peters sent an email to Trevene, reminding her that they had spoke last week over the telephone about the payoff, advising her that he had called three other times and left voice messages but heard nothing in return from her, and indicating that the loan should be closed out and paid in full. A true, accurate and authenticate copy of the email is attached hereto as Exhibit E.

26. Defendant Comerica and Defendant Onity still failed to provide the requested final payoff number and failed to address the forced insurance issue. Thus, Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters, then visited a local branch, and met with Stephen Purnell, a Vice-President of Defendant Comerica. Doug Peters advised Mr. Purnell regarding his multiple attempts to get a payoff number and of the lack of a need for forced insurance. Mr. Purnell apologized and stated that he had never seen something like this, but that he could not help.

At the request of Doug Pteres, Mr. Purnell gave him his business card. A true, accurate and authenticate copy of Mr. Purnell's business is attached hereto as Exhibit F.

27. On May 4, 2026, after holding Plaintiffs' money for two weeks, Defendant Comerica returned Doug Peter's wired money without applying it to the loan, without any explanation, and without any communication with Plaintiffs. A true, accurate and authenticate copy of Mr. Purnell's business is attached hereto as Exhibit G.

28. On May 4, 2026, Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters, again emailed "Trevane," stating, in relevant part: "Good afternoon, I just received contact from my bank that you returned my payoff wire for the payoff of my mortgage. This is beyond words and I believe borders on fraud the way I have been treated." A true, accurate and authenticate copy of the email is attached hereto as Exhibit H.

NOT A CERTIFIED COPY

29. Despite Doug Peters', on behalf of himself individually, Peters Trustee and Irwin Peters, multiple requests for a payoff number, his wiring of $1,346,791.36 to Comerica, the lack of any viable improvement on the Property, Defendant Comerica's refusal to provide a payoff number, Defendant Comerica's return of wired funds $1,346,791.36, Comerica boldly and audaciously went ahead and charged monthly forced insurance in the approximate amount of $20,532.58 per month, requiring payment on May 1, 2026. A true, accurate and authenticate copy of the bank statement is attached hereto as Exhibit I.

30. On or about May 20, 2026, Defendant Onity sent an email to Doug Pteres, stating that they were sending an inspector to inspect the Property, to which Doug Peters responded stating that he would accommodate the inspector and inspection. A true, accurate and authenticate copy of the email chain is attached hereto as Exhibit J.

31. On May 27, 2026, one week later, Doug Peters sent another email advising that no inspector had contacted him, and that he was receiving late notices and late notice fees. A true, accurate and authenticate copy of the email chain is attached hereto as Exhibit K.

32. An inspector eventually inspected the Property, and stated to Doug Peters he had no idea why they sent him to inspect a destroyed property.

33. Plaintiffs were ultimately charged monthly forced insurance in the approximate amount of $214,663.26.

34. On or about July 3, 2026, Comerica finally allowed Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters, to payoff the Mortgage, but required him to pay approximately $214,663.26.in forced insurance as part of the payoff.

**LAW**

35. 12 U.S.C.A. §2605(i)(2) defines a "servicer," in part, as follows:

NOT A CERTIFIED COPY

"(2) Servicer. The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."

36. 12 U.S.C.A. §2605(e) proscribes certain duties of servicers to respond to borrower inquiries, including, but not limited to, the following:

"(1) Notice of receipt of inquiry
(A) In general
If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request
For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry
Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is
correct as determined by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can
provide assistance to the borrower; or

NOT A CERTIFIED COPY

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."

37. 12 U.S.C.A. §2605(k)(2) defines "forced placed insurance: as follows:

"For purposes of this subsection and subsections (l) and (m), the term "force-placed insurance" means hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage."

38. 12 U.S.C.A. §2605(k) proscribes certain limitations on "forced placed insurance," including, but not limited to the following:

"Limitations on force-placed insurance charges - All charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." 12 U.S.C.A. §2605(m)

39. 12 U.S.C.A. §2605 creates private causes of action for damages sustained by borrowers regarding violations of 2 U.S.C.A. §2605, and states, in relevant part:

"(f) Damages and costs
Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
(1) Individuals
In the case of any action by an individual, an amount equal to the sum of--
(A) any actual damages to the borrower as a result of the failure; and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C.A. §2605(f)

(3) Costs
In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any

NOT A CERTIFIED COPY

attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

**CONDITIONS PRECEDENT**

40. Plaintiff has satisfied all conditions precedent or they have been waived.

**ATTORNEYS FEES AND COSTS**

41. Plaintiff shave retained the undersigned attorneys and are obligated to pay them reasonable attorney's fees and costs.

**COUNT I**
**(AGAINST DEFENDANT COMERICA)**

42. Plaintiffs re-allege and incorporates\ Paragraphs 1-41 as if fully re-written herein.

43. The subject note and mortgage were a federally related mortgage loan under 12 U.S.C.A. §2605.

44. Defendant Comerica was a "servicer" of the Note and Mortgage, pursuant to 12 U.S.C.A. §2605(i)(2).

45. Exhibits C, E and H, were qualified written requests, as defined by 12 U.S.C.A. §2605(e), made by Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters.

46. Defendant Comerica violated 12 U.S.C.A. §2605(e) by not providing timely written responses to these qualified written requests.

47. Defendant Comerica did not have a bona fide and reasonable basis to charge Plaintiffs the force-placed insurance, as required by 12 U.S.C.A. §2605(m), as the charging of forced insurance was unnecessary and unwarranted, and the amount charged was excessive, given Plaintiffs' attempts to pay-off the loan prior to imposition of the forced insurance, its failure to timely provide a loan payoff figure, its return of the wire payment two weeks later, and the lack of a tangible value to insure and/or materially diminished tangible value to insure.

NOT A CERTIFIED COPY

48. As a direct and proximate result of said violations of 2 U.S.C.A. §2605, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment against Defendant Comerica, awarding Plaintiffs money damages, reasonable attorney's fees and costs, and any other relief this Court deems just and proper.

**COUNT II – BREACH OF MORTGAGE**
**(Against Defendant Comerica)**

NOT A CERTIFIED COPY

49. Plaintiff s re-allege and incorporate Paragraphs 41 as if fully re-written herein, and brings this Count II in the alternative to Count I.

50. Defendant Comerica materially breached the note and Mortgage and the implied covenant of good faith and fair dealing by charging the forced insurance, as the charging of forced insurance was unnecessary and unwarranted, and the amount charged was excessive, given Plaintiffs' attempts to pay-off the loan prior to imposition of the forced insurance, its failure to timely provide a loan payoff figure, its return of the wire payment two weeks later, and the lack of a tangible value to insure and/or materially diminished tangible value to insure.

51. As a direct and proximate result of said breaches, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment against Defendant Comerica, awarding Plaintiffs money damages, reasonable attorney's fees and costs pursuant to the prevailing fee provision in the note and Mortgage, and any other relief this Court deems just and proper.

**COUNT III**
(Against Defendant Onity)

52. Plaintiffs re-allege and incorporate Paragraphs 1-41 as if fully re-written herein.

53. The subject note and mortgage were a federally related mortgage loan under 12 U.S.C.A. §2605.

54. Defendant Onity was a "servicer" of the Note and Mortgage, pursuant to 12 U.S.C.A. §2605(i)(2).

55. Exhibits C, E and H, were qualified written requests, as defined by 12 U.S.C.A. §2605(e), made by Doug Peters, on behalf of himself individually, Peters Trustee and Irwin Peters.

56. Defendant Onity violated 12 U.S.C.A. §2605(e) by not providing written responses to these qualified written requests.

57. Defendant Onity did not have a bona fide and reasonable basis to charge Plaintiffs the force-placed insurance, as required by 12 U.S.C.A. §2605(m), as the charging of forced insurance was unnecessary and unwarranted, and the amount charged was excessive, given Plaintiffs' attempts to pay-off the loan prior to imposition of the forced insurance, its failure to timely provide a loan payoff figure, its return of the wire payment two weeks later, and the lack of a tangible value to insure and/or materially diminished tangible value to insure.

58. As a direct and proximate result of said violations of 2 U.S.C.A. §2605, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment against Defendant Onity, awarding Plaintiffs money damages, reasonable attorney's fees and costs, and any other relief this Court deems just and proper.

NOT A CERTIFIED COPY

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues so triable in this case.

Respectfully submitted,

**LAW OFFICES OF GREGORY R. ELDER, PLLC**
BY: */s/Gregory R. Elder*
Gregory R. Elder, Esq.

Florida Bar No. 54006
Law Offices of Gregory R. Elder, LLC
2300 N.W. Corporate Boulevard, Suite 215
Boca Raton, FL 33431
Phone: (305) 546-1061
Email: gelderlaw@gmail.com
*Attorneys for Plaintiff*

**LAW OFFICES OF JASON EVANS, LLC**
**D/B/A EVANS LAW**

By: */s/Jason Evans, Esq.*
Jason Evans, Esq.
2300 NW Corporate Blvd., Suite 215
Boca Raton, Florida 33480
(561) 832-8288 Telephone
Fla. Bar No.: 73779
JASON@EVANSLAWFL.COM
Attorneys for Plaintiff

NOT A CERTIFIED COPY

# EXHIBIT A

NOT A CERTIFIED COPY

CFN 20110028302
OR BK 24328 PG 0535
RECORDED 01/24/2011 16:30:50
Palm Beach County, Florida
AMT 1,865,000.00
Deed Doc 6,527.50
Intang 3,730.00
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 0535 - 567; (33pgs)

Return To:

Comerica Bank
1 Mortgage Way Mount Laurel, NJ
08054

This document was prepared by:

Theresa Holmes, Comerica Bank
1 Mortgage Way Mount Laurel, NJ
08054

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 100078471185451984

NOT A CERTIFIED COPY

NOT CERTIFIED COPY

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated January 6, 2011 together with all Riders to this document.

(B) **"Borrower"** is

Irwin Peters and Linda Peters, husband and wife, and Douglas Peters, a single man and Douglas Peters, as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is Comerica Bank

Lender is a Texas banking association
organized and existing under the laws of Texas.
Lender's address is 1 Mortgage Way Mount Laurel, NJ 08054.

**(E) "Note"** means the promissory note signed by Borrower and dated January 6, 2011.
The Note states that Borrower owes Lender One Million Eight Hundred Sixty-Five Thousand Dollars and Zero Cents Dollars
(U.S. $ 1,865,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1st, 2041.
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [x] Second Home Rider |
| [ ] Balloon Rider | [x] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

NOT A CERTIFIED COPY
NOT A CERTIFIED COPY

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY [Type of Recording Jurisdiction] of PALM BEACH [Name of Recording Jurisdiction]:

LOT 23, LE LAC PLAT 3, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 58, PAGE(S) 130 TO 132, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

NOT A CERTIFIED COPY

NOT CERTIFIED COPY

Parcel ID Number: which currently has the address of
6023 LE LAC ROAD [Street]
BOCA RATON [City], Florida 33496 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

NOT A CERTIFIED COPY
NOT A CERTIFIED COPY

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.
Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

NOT A CERTIFIED COPY
NOT A CERTIFIED COPY

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

NOT A CERTIFIED COPY

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

NOT A CERTIFIED COPY

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

NOT CERTIFIED COPY

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

NOT A CERTIFIED COPY

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of



NOT A CERTIFIED COPY

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

NOT A CERTIFIED COPY

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

NOT A CERTIFIED COPY

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

NOT A CERTIFIED COPY

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products). Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



NOT A CERTIFIED COPY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

x [signature] MARGARET COPPOLA

x [signature] CHRISTINE BIONDI

[signature] (Seal)
Irvin Peters, individually -Borrower

290 BEAUMONT STREET, BROOKLYN, NY 11235 (Address)

[signature] (Seal)
Linda Peters, individually -Borrower

(Address)

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

_______________________________ (Seal)
Douglas Peters, a single man, individually -Borrower

_______________________________ (Seal)
Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004 -Borrower

(Address)

(Address)

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

State of Florida Palm Beach County ss:

This foregoing instrument was acknowledged before me this 6 day of January, 2011 by Douglas Peters, a single man, individually and as Trustee of the Douglas Peters Declaration of Trust dated May 6, 2004, who is personally known to me or has produced __________ as identification.

_______________________________
Notary Public

MARJORIE S. MARGOLIES
Notary Public - State of Florida
My Comm. Expires Nov 14, 2014
Commission # EE 41724
Bonded Through National Notary Assn.

(Address)

(Address)

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

____________________ (Seal) -Borrower

____________________ (Seal) -Borrower

(Address)

(Address)

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

**STATE OF FLORIDA,** PALM BEACH **County ss:**

This foregoing instrument was acknowledged before me this day of January, 2011

By Irwin Peters and Linda Peters, husband and wife, and Douglas Peters, a single man,Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004

who is personally known to me or who has produced / as identification.

(Notary Public)

MARGARET COPPOLA
Notary Public, State of New York
No. 01CO4744887
Qualified in Westchester County
Commission Expires January 3, 2014

# FIXED/ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this 06th day of January, 2011 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to Comerica Bank

("Lender") of the same date and covering the property described in the Security Instrument and located at: 6023 LE LAC ROAD BOCA RATON, FL 33496

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

·The Note provides for an initial fixed interest rate of 4.375 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4 ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**·(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of February, 2016 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Twenty-Five / Hundredths percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.375 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

NOT A CERTIFIED COPY

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

NOT A CERTIFIED COPY

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

| | |
|---|---|
| _______________ (Seal) Irwin Peters, individually -Borrower | _______________ (Seal) Linda Peters, individually -Borrower |
| _______________ (Seal) Douglas Peters, a single man, individually -Borrower | _______________ (Seal) Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004 -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae UNIFORM INSTRUMENT**

VMP -168R (0401).02 Page 4 of 4 **Form 3187 6/01**

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

| | |
|---|---|
| _______________ (Seal) -Borrower<br>Irwin Peters, individually | _______________ (Seal) -Borrower<br>Linda Peters, individually |
| _______________ (Seal) -Borrower<br>Douglas Peters, a single man, individually | _______________ (Seal) -Borrower<br>Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004 |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |

NOT A CERTIFIED COPY
NOT A CERTIFIED COPY

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 06th day of January, 2011, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to Comerica Bank

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 6023 LE LAC ROAD BOCA RATON, FL 33496

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as

LE LAC

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

NOT A CERTIFIED COPY

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

NOT A CERTIFIED COPY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

(Seal) -Borrower
Irwin Peters, individually

(Seal) -Borrower
Linda Peters, individually

(Seal) -Borrower
Douglas Peters, a single man, individually

(Seal) -Borrower
Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_________________________ (Seal) -Borrower
Irwin Peters, individually

_________________________ (Seal) -Borrower
Linda Peters, individually

_________________________ (Seal) -Borrower
Douglas Peters, a single man, individually

_________________________ (Seal) -Borrower
Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 06th day of January, 2011 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to Comerica Bank

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

6023 LE LAC ROAD BOCA RATON, FL 33496
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

NOT A CERTIFIED COPY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

| | |
|---|---|
| _______________ (Seal) -Borrower<br>Irwin Peters, individually | _______________ (Seal) -Borrower<br>Linda Peters, individually |
| _______________ (Seal) -Borrower<br>Douglas Peters, a single man, individually | _______________ (Seal) -Borrower<br>Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004 |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

| | |
|---|---|
| (Seal) Irwin Peters, individually -Borrower | (Seal) Linda Peters, individually -Borrower |
| (Seal) Douglas Peters, a single man, individually -Borrower | (Seal) Douglas Peters as Trustee of The Douglas Peters Declaration of Trust dated May 6, 2004 -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

**MULTISTATE SECOND HOME RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3890 1/01**
**-365R** (0811)
Page 2 of 2

Loan #: 7118545198

# SIGNATURE PAGE ATTACHMENT

BY SIGNING BELOW, the Borrower(s) accept(s) and agree(s) to the terms and covenants set forth herein and in any rider(s) executed by Borrower(s) here attached.

Douglas Peters ,
Trustee of the The Douglas Peters Declaration Of Trust Trust
under trust instrument dated May 6th, 2004 for the benefit of
Douglas Peters .

,
Trustee of the Trust
under trust instrument dated for the benefit of
.

,
Trustee of the Trust
under trust instrument dated for the benefit of
.

,
Trustee of the Trust
under trust instrument dated for the benefit of
.

MULTISTATE INTER VIVOS REVOCABLE TRUST SIGNATURE PAGE ATTACHMENT



NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

Original

BY SIGNING BELOW, the undersigned, Settlor(s) of the **The Douglas Peters Declaration Of Trust**
Trust under trust instrument dated **May 6th, 2004** for the benefit of
Douglas Peters ,
acknowledge(s) all of the terms and covenants contained in this document and in any rider(s) thereto and agree(s) to be bound thereby.

Douglas Peters ______________________ Trust Settlor

______________________ Trust Settlor

______________________ Trust Settlor

______________________ Trust Settlor

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

## INTER VIVOS REVOCABLE TRUST AS BORROWER - ACKNOWLEDGMENT

Loan #: 7118545198

BY SIGNING BELOW, the undersigned, Settlor(s) of the The Douglas Peters Declaration Of Trust
Trust under trust instrument dated May 6th, 2004, for the benefit of Douglas Peters, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

| | |
|---|---|
| Douglas Peters -Trust Settlor | -Trust Settlor |
| -Trust Settlor | -Trust Settlor |
| -Trust Settlor | -Trust Settlor |
| -Trust Settlor | -Trust Settlor |

NOT A CERTIFIED COPY
NOT A CERTIFIED COPY



Original

# EXHIBIT B

NOT A CERTIFIED COPY

Comerica Bank
P O BOX 5954, SPRINGFIELD, OH 45501-5954

Tel: 1-888-882-1855
Fax: 1-937-525-4210

Date: December 18, 2025

IRWIN PETERS
LINDA PETERS
6023 LE- LAC RD
BOCA RATON, FL 33496

Subject: **Please provide insurance information for**
6023 LE LAC RD
BOCA RATON, FL 33496

NOT A CERTIFIED COPY

Dear IRWIN PETERS:

Our records show that your hazard insurance for the above referenced property expired, and we do not have evidence that you have obtained new coverage. **Because hazard insurance is required on your property, we plan to buy insurance for your property. You must pay us for any period during which the insurance we buy is in effect but you do not have insurance.**

**You should immediately provide us with your insurance information in writing for the property address referenced above.** All you need to do is ask your insurance agent to include the loan number and property address above on a copy of your new/renewal policy or notice of reinstatement and fax it with a Mortgagee Clause/Lender's Loss Payable Endorsement as soon as possible to: 1-937-525-4210. You/your agent can mail the documents to:

COMERICA BANK
ITS SUCCESSORS AND/OR ASSIGNS
AS THEIR INTEREST MAY APPEAR
P O BOX 5954
SPRINGFIELD, OH 45501-5954
LOAN NUMBER: **7118545198**

Alternatively, you may update your hazard insurance coverage information online at www.mycoverageinfo.com/mortgagefamily.

The insurance we buy:

- **May be significantly more expensive than the insurance you can buy yourself.**
- **May not provide as much coverage as an insurance policy you buy yourself.**

If you have any questions, please contact us at 1-888-882-1855. Please review the additional important information contained on the following pages of this notice.

# EXHIBIT C

NOT A CERTIFIED COPY

theupsstore.com
PRINTING
COPYING
FAXING

ISMISSION VERIFICATION REPORT

TIME : 01/08/2026 12:47
NAME : THE UPSSTORE 6645
FAX : 5615084734
TEL : 5615084734
SER.# : BROH4J524836

| | |
|---|---|
| DATE,TIME | 01/08 12:46 |
| FAX NO./NAME | 19375254210 |
| DURATION | 00:01:09 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD<br>ECM |

NOT A CERTIFIED COPY

Attn: Comenca Bank

RE: LOAN # 7118545198

I have Been trying to contact the Bank VIA the #s you supplied and Am unable to Speak to Anyone IN the Numerous Attempts. I have Demolished my Home and Am Building A New House on this Property. I currently Dont Need Insurance For VACANT LAND. The LAND itself is Valued At over 6 million Dollars I owe Less Than 1.4 Million and Have Been A customer who Has PAID on time For 20+ years. IF this is not suitable Please contact Me @ 561-516-1355 I will Pay off the LOAN in Full

Please call me 561-516 1355 I. Peters

NOT ACCERTIFIED COPY

# EXHIBIT D

NOT A CERTIFIED COPY

**Wire Transfer of Funds Notice**

**OUTGOING DOMESTIC WIRE**

**Checking Account**

[redacted]

815 Colorado Ave
Stuart FL 34994
(800) 706-9991

DOUG PETERS DEC OF TRUST UTD 5/6/2004
6023 LE LAC RD
BOCA RATON, FL 33496-2316

Processing Date: 4/20/2026
Time: 9:07AM

The Following Information Was Sent For: Regular Transfer of Funds

Originator: ID#: XXXXXXXXXX[redacted]
DOUG PETERS DEC OF TRUST UTD 5/6/2004
6023 LE LAC RD
BOCA RATON, FL 33496-2316
US

Wire Amount: $1,346,791.36

Beneficiary: ID#: XXXXXXXXXXXXX48821
Onity Mortgage Corp
2000 Midlantic Dr Suite 410-A
Mt Laurel Township, NJ 08054
US

Wire Charged To: [redacted]

IMAD: 20260420MMQFMP04000105

Additional Wire Information:

Reference: 20260420000296 Purpose of Wire: Mortgage Payoff for Doug Peters Receiving Institution: 0220-0004-6 MANUFACTURERS & TRADERS TRUST CO Branch: 84 UETR: 4bebd5ba-e70e-456a-83c4-5b88341db559 OMAD: 20260420B2Q8921C001535042009l0FT01

**Please retain this receipt and adjust your account records accordingly. If you have any questions regarding this transaction, please contact our Telephone Banking Center at (800) 706-9991.**

1 Src: Fedline Verified By: JULLOA01 Ref #: 296

# EXHIBIT E

NOT A CERTIFIED COPY

From: **DOUGLAS PETERS** drp12364@aol.com
Subject: **Loan # 7118545198 attn- Trevene**
Date: **Apr 28, 2026 at 4:02:26 PM**
To: **erm@mortgagefamily.com**
Bcc: **drp12364@aol.com**

Good afternoon, I spoke to you last week about my payoff on our mortgage that we have had for over 15 years with Comerica bank. I left 3 voice messages for you leaving all the info each time on how to reach me. Please I need someone to help me. Can you please call me back. I am attaching all the proof I have that this account - loan should be closed out as paid in full. Please call me 561-5161355 Irwin Peters

**Scan Apr 25, 2026 at 9.39 AM.pdf**
2 MB

NOT A CERTIFIED COPY

# EXHIBIT F

NOT A CERTIFIED COPY

Comerica Bank®

Comerica Bank
MC 5177
One South Federal Highway
Boca Raton, FL 33432

Stephen C Purnell
Bank Manager, Vice President

scpurnell@comerica.com
Office: 561.447.7982
Fax: 561.447.7991
NMLS ID: #466482

NOT A CERTIFIED COPY

RAISE YOUR EXPECTATIONS®

# EXHIBIT G

NOT A CERTIFIED COPY

od afternoon,

e referenced funds were returned and credited to our customers account, we close ou

Access Online

Customer Info [redacted] App DEP DOUG PETERS DEC OF TRUST UTI

O/L

Benef ID Type Bank Account Acct YOURSELVES

Beneficiary Info PREVIOUS DAY RETURN

Called

Receiving Inst ABA [redacted] Seacoast National

Avail Bal: $3,471,674.60

Wire Amount: $1,346,791.36

Sending Inst ABA [redacted] MFRS BUF

Originator Info PHHMC-PAYOFF AGT/TTEE/BLEE/CUST 4BE

turn reason states:

[redacted]

der Ref Nbr [redacted] 00

Wire Amount 1,346,791.36

iginator to Beneficiary (6000) / nstructured Remittance: RTN YR IMAD:20260420MMQFMP04000105YR REF:20260420000296PER BNF REQUEST(MD06)

ank to Bank Information (6500)

# EXHIBIT H

NOT A CERTIFIED COPY

**From:** DOUGLAS PETERS drp12364@aol.com
**Subject:** Loan # 7118545198 attn- Trevene *VERY IMPORTANT * 2nd notice via email
**Date:** May 5, 2026 at 4:20:20 PM
**To:** erm@mortgagefamily.com

Hi, Can someone please read below and call me. Irwin peters
561-5161355

Begin forwarded message:

**From:** DOUGLAS PETERS <drp12364@aol.com>
**Date:** May 4, 2026 at 4:10:12 PM EDT
**To:** erm@mortgagefamily.com
**Subject: Re: Loan # 7118545198 attn- Trevene *VERY IMPORTANT ***

Good Afternoon, I just received contact from my bank they you returned my payoff wire for the payoff of my mortgage. This is beyond words and I believe borders on fraud the way I have been treated. I have supplied all the documentation proof that you are trying to charge me for forced insurance when you were put on notice there was no home on the property now you return my money wire for the payoff. I need someone to contact me as soon as possible to rectify this problem. Irwin peters 561-5161355.

NOT A CERTIFIED COPY

On Apr 28, 2026, at 4:02 PM, DOUGLAS PETERS <drp12364@aol.com> wrote:

Good afternoon, I spoke to you last week about my payoff on our mortgage that we have had for over 15 years with Comerica bank. I left 3 voice messages for you leaving all the info each time on how to reach me. Please I need someone to help me. Can you please call me back. I am attaching all the proof I have that this account - loan should be

closed out as paid in full. Please call me 561-5161355 Irwin Peters

NOT A CERTIFIED COPY

# EXHIBIT I

NOT A CERTIFIED COPY

Comerica Bank

C/O Onity Mortgage | PO BOX 24738
West Palm Beach FL 33416

4/7/26 8:08 PM 76 0039034 20260407 Q85751-08 I041 1_1OZ DOM Q857510000* I041 PHMS

IRWIN PETERS
LINDA PETERS
C
...16

## Mortgage Statement

**Account number:**

**Statement date:** 04/07/2026
**Payment due date:** 5/1/2026

**Amount due:**
**$36,385.52**

*If your payment is received after 5/16/2026 a $585.78 late fee may be charged.*

## Need Help?

**Visit us online:** www.MortgageQuestions.com
**Customer service** 1-800-936-0908
**We're here to help:** Monday - Friday 8:00 am to 9:00 pm ET
Saturday 8:00 am to 5:00 pm ET

## Important Information

**This communication is from Onity Mortgage Corporation ("Onity Mortgage"), formerly known as PHH Mortgage Corporation.**

Thank you for your payment. Your last full payment was applied to the payment due 04/01/2026. Your account is presently due for the 5/1/2026 payment.

## Explanation of Amount Due




| | |
|---|---|
| **Regular payment** | $36,385.52 |
| **Total new fees and charges** | $0.00 |
| **Outstanding fees and charges** | $0.00 |
| **Assessed expenses** | $0.00 |
| **Past due payment** | $0.00 |
| **Total amount due** | **$36,385.52** |

## Account Information

**Property address:**
6023 LE LAC RD
BOCA RATON, FL 33496

| | |
|---|---|
| **Outstanding balance** (not payoff amount) | $1,346,791.36 |
| **Current interest rate (until 2/2027)** | 6.3750 % |
| **Prepayment penalty** | No |
| **Escrow balance** | -$25,822.52 |
| **Suspense balance** | $0.00 |
| **Maturity date** | 2/1/2041 |

## Past Payments Breakdown

| | Paid since last statement | Paid year to date |
|---|---|---|
| **Principal** | $4,538.96 | $13,260.29 |
| **Interest** | $7,178.94 | $22,457.18 |
| **Escrow** (taxes and/or Insurance) | $0.00 | $0.00 |
| **Fees** | $0.00 | $0.00 |
| **Optional products** | $0.00 | $0.00 |
| **Partial payment** (unapplied/suspense)* | $0.00 | $0.00 |
| **Total** | **$11,717.90** | **$35,717.47** |

## Sign up for Autopay

**Avoid postal delays**
enroll in Autopay for on-time payments and peace of mind. Its free and easy to setup. You can cancel at any time.

**You can enroll in three easy steps**

1. Sign onto your account
2. Link your bank account
3. Choose the date of your payment

## Access Your Account on the App

Download on the App Store

GET IT ON Google Play

## Other Ways to Pay

Online at www.MortgageQuestions.com

On the go with mobile app

By phone 1-800-936-0908

## Transaction Activity

| Posted date | Received/ credited date | Description | Principal | Interest | Escrow | Late charges, shortages & fees | Suspense & other | Optional product | Total |
|---|---|---|---|---|---|---|---|---|---|
| 03/26 | | Hazard Insurance AMERICAN SECURITY INS CO | $0.00 | $0.00 | -$25,822.52 | $0.00 | $0.00 | $0.00 | $25,822.52 |
| 04/06 | 04/06 | Payment | $4,538.96 | $7,178.94 | $0.00 | $0.00 | $0.00 | $0.00 | $11,717.90 |



Complete this coupon; tear it off and return with your check

Account number : 7118545198

Amount Due $36,385.52

NOT A CERTIFIED COPY

# EXHIBIT J

NOT A CERTIFIED COPY

Found in Sent Mailbox

DP **DOUGLAS PETERS** 4:39 PM
To: Department Bcc: DOUGLAS >

## Re: Important Account Information

Good Afternoon, I man called me from India saying he needs to set up an inspection on the home at 6023 le lac road because it's going into foreclosure. I told him he is incorrect on why the inspection was requested. I asked him who was doing the inspection and he replied he was hired to set up a local vendor again another clown show event. I said have the local vendor call me and I will accommodate a showing of the property immediately. No idea why you had a man from India at a calling center call me.

> On May 20, 2026, at 3:55 PM, ERM Department <ERMDepartment@mortgagefamily.com> wrote:

See More

1 New Message Summarize

ED **ERM Department** 3:55 PM
To: drp12364@aol.com >

Dear Irwin,

Please be advised that an inspector will contact you within 24 hours to schedule a visit to assess the property for fire damage related to the force-placed insurance.

**This communication is from Onity Mortgage Corporation ("Onity Mortgage"), formerly known as PHH Mortgage Corporation.**

Best regards,
Email Support Team

**Access Your Account On Our Mobile App**
Access your mortgage account on our free mobile app on your iPhone or Android device.

Download on the App Store GET IT ON Google Play

NOT A CERTIFIED COPY

transactions. Any financial transaction instruction or inquiry should be made by calling our telephone banking center at 800-706-9991 or visiting your local Seacoast Bank office. This e-mail and the attachments may contain legally privileged confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, any reading, dissemination, copying, or other use of this message or its attachments is prohibited. If you have received this message in error, please notify the sender immediately and delete this message and all copies.

NOT A CERTIFIED COPY

# EXHIBIT K

NOT A CERTIFIED COPY

7:07

From: DP
To: erm@mortgagefamily.com
Department ERM
Bcc: DP
Today at 7:06 AM

Sent 5-27
7:06 Am

**Still no phone call from your vendor to set up inspection of 6023 Le lac rd after denying my right to pay down or pay off principal of loan for over a month**

Good Morning, We are now passing 2 weeks since you promised to have someone contact me to inspect the home all while still sending me late notices and late fee notices of $585.78 x2. This is a pure delay tactic as outlined in all our emails, taped conversations and meetings with my local comerica branch by me in the past. Please govern yourself accordingly as all will be displayed for the mass public to see what you have done here. I. Peters
561-5261355




NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.

DOUGLAS PETERS, TRUSTE EOF THE
DOUGLAS PETERS DECLARATION OF
TRUST DATED MAY 6, 2004

DOUGLAS PETERS

IRWIN PETERS

Plaintiffs

COMERICA BANK

ONITY MORTGAGE CORPORATION

Defendants.
_____________________________/

**SUMMONS**

NOT A CERTIFIED COPY

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on the following Defendant:

ONITY MORTGAGE CORPORATION
c/o registered agent: Corporation Service Company
1201 Hays Street
Tallahassee, Fl 32301-2525

Each Defendant is required to serve written defenses to the Complaint or petition on Gregory R. Elder, Esq., Plaintiffs' attorney, whose address is 2300 NW Corporate Blvd., Suite 215, Boca Raton, Florida 33431, within twenty (20) days after service of this Summons on that Defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafte. If a Defendant fails to do so, default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

Dated: Sep 03 2026 SHANNON RAMSEY-CHESSMAN CLERK AD INTERIM

CLERK OF THE CIRCUIT COURT & COMPTROLLER PALM BEACH COUNTY

By: ______________________

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protectyou; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself at the same time you file your written response to the Court, you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the Complaint.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la Ilamada telefonica no lo protegera; si usted desea que el tribunalincluyendo el numero del caso y las partes interesadas en dicho caso. Si usted no contesta lademanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, oprivado de sus derechos, sin previo eviso del tribunal. Existen otros requistitos legales. Si lo desea,puede abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta surespuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado delDemanadante).

**IMPORTANT**

Des poursuites du numero de dossier ci-dessus et du no des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposezpas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire,votre argent, et vos biens peuvent etre saisis par la uite, sans aucun preavis ulterieur du Tribunal. II y a d'autres obligations juidiques et vour pouvez requerir les services immediats d'un avocat. Si your ne connaissez pas d'avocat, yous pourriez telephoner a un service de reference d'avacoats oua un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il yous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocipie de votre reponseecrite au "Plaintiff/Plaintiffs Attorney" (Plaignant ou a son avocat) namme nan plent la3.

NOT A CERTIFIED COPY

This notice is provided pursuant to Administrative Order No. 2.207-7/22*

“If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings Jr., MPA, PHR, the Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.”

“Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings Jr., MPA, PHR, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si eltiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.”

“Si ou se yon moun ki enfim ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings Jr., MPA, PHR, k donatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telef n li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711.”

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.

DOUGLAS PETERS, TRUSTE EOF THE
DOUGLAS PETERS DECLARATION OF
TRUST DATED MAY 6, 2004

DOUGLAS PETERS

IRWIN PETERS

Plaintiffs

COMERICA BANK

ONITY MORTGAGE CORPORATION

Defendants.
_____________________________/

**SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on the following Defendant:

Comerica Bank
c/o registered agent: Corporate Creations Network Inc.
801 Us Highway 1
North Palm Beach, FL 33408

Each Defendant is required to serve written defenses to the Complaint or petition on Gregory R. Elder, Esq., Plaintiffs' attorney, whose address is 2300 NW Corporate Blvd., Suite 215, Boca Raton, Florida 33431, within twenty (20) days after service of this Summons on that Defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafte.
If a Defendant fails to do so, default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

Dated: Sep 03 2026 SHANNON RAMSEY-CHESSMAN CLERK AD INTERIM

CLERK OF THE CIRCUIT COURT & COMPTROLLER PALM BEACH COUNTY

By:_______________

NOT A CERTIFIED COPY

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protectyou; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself at the same time you file your written response to the Court, you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the Complaint.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la Ilamada telefonica no lo protegera; si usted desea que el tribunalincluyendo el numero del caso y las partes interesadas en dicho caso. Si usted no contesta lademanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, oprivado de sus derechos, sin previo eviso del tribunal. Existen otros requistitos legales. Si lo desea,puede abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta surespuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado delDemanadante).

**IMPORTANT**

Des poursuites du numero de dossier ci-dessus et du no des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposezpas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire,votre argent, et vos biens peuvent etre saisis par la uite, sans aucun preavis ulterieur du Tribunal. II y a d'autres obligations juidiques et vour pouvez requerir les services immediats d'un avocat. Si your ne connaissez pas d'avocat, yous pourriez telephoner a un service de reference d'avacoats oua un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il yous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocipie de votre reponseecrite au "Plaintiff/Plaintiffs Attorney" (Plaignant ou a son avocat) namme nan plent la3.

NOT A CERTIFIED COPY

This notice is provided pursuant to Administrative Order No. 2.207-7/22*

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings Jr., MPA, PHR, the Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings Jr., MPA, PHR, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si eltiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon moun ki enfim ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings Jr., MPA, PHR, k donatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telef n li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

NOT A CERTIFIED COPY

**SHANNON RAMSEY-CHESSMAN**
**CLERK AD INTERIM**

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

# RECEIPT

6433292

Printed On:
09/03/2026 11:34
Page 1 of 1

**Receipt Number: 6433292 - Date 09/03/2026 Time 11:34AM**

| | | | |
|---|---|---|---|
| **Received of:** | Gregory R Elder<br>707 sw 17th street<br>707 sw 17th street<br>Fort Lauderdale, FL 33315 | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | 421.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 421.00 |
| **Receipt ID:** | 12911697 | **Remaining Balance:** | 0.00 |
| **Division:** | AO: Circuit Civil Central - AO(Civil) | | |

**Case# 50-2026-CA-009933-XXXA-MB -- PLAINTIFF/PETITIONER: DOUGLAS PETERS TRUSTEE**

| Item | Balance | Paid | Bal Remaining |
|---|---|---|---|
| Fees | 421.00 | 421.00 | 0.00 |
| **Case Total** | **421.00** | **421.00** | **0.00** |

**Payments**

| Type | Ref# | Amount |
|---|---|---|
| EFiling_CREDITCARD | 20346981 | **421.00** |
| **Total Received** | | **421.00** |
| **Total Paid** | | **421.00** |

**How was your service today?** Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AO"
CASE NO.: 502026CA009933XXXAMB

DOUGLAS PETERS,
DOUG PETERS,
IRWIN PETERS,
Plaintiff/Petitioners
vs.
COMERICA BANK,
ONITY MORTGAGE CORPORATION,
Defendant/Respondents.
______________________________________/

**UNIFORM DIFFERENTIATED CASE MANAGEMENT ORDER AND ORDER SETTING TRIAL**
(DCMGJT)

NOT A CERTIFIED COPY

**THIS MATTER** is a Circuit Civil case calling for a jury trial. Pursuant to Fla. R. Gen. Prac. & Jud. Admin. 2.250(a)(1)(B) and 2.545(b), and Fifteenth Judicial Circuit Administrative Order 3.110 (as amended), **Plaintiff/Petitioner is directed to serve this Order upon each Defendant/Respondent with the initial Complaint/Petition and Summons**.

It is hereby **ORDERED AND ADJUDGED** that this case is designated to the **GENERAL TRACK** for time to disposition. The deadlines and procedures set forth in this Order will be strictly enforced unless changed by court order.

Consistent with the Professionalism Expectations of the Florida Supreme Court and the Florida Bar, the parties and counsel are expected to govern themselves at all times with a spirit of cooperation, professionalism and civility. They are expected to accommodate each other whenever reasonably possible and eliminate disputes by reasonable agreements. Self-Represented/*Pro Se* Litigants (i.e., those without counsel) are held to the same procedural and legal obligations as are imposed upon counsel.

## I. SCHEDULING

### A. Calendar Call

**YOU MUST APPEAR FOR A MANDATORY CALENDAR CALL on May 12, 2028 at 9:00 am**. The parties must be ready to try the case by that date. The actual trial period begins on the docket associated with this Calendar Call date as provided in Divisional Instructions or by court order.

Calendar Call may be conducted in person, via Zoom or by e-calendar. All parties are instructed to review the Court's Divisional Instructions for specific procedures at

www.15thcircuit.com/divisions.

At the Calendar Call, the Court may conduct a final case management conference. Attorneys who appear for Calendar Call must be prepared on all pending matters and have authority to make representations to the Court and enter into binding agreements concerning motions, issues, and scheduling. These include issues raised by the parties' Pre-Trial Stipulation; trial procedures; jury selection procedures; jury instructions and objections; and the need for any special equipment, courtroom facilities, or interpreters. An appearing attorney must be prepared to advise the Court of all attorneys' availability for trial and future hearings as necessary.

**This Order serves as notice to the parties that failure to attend Calendar Call will result in an Order of Dismissal without prejudice, or entry of default, without further notice or hearing. *See* Fla. R. Civ. P. 1.200(j)(6).**

B. **Case Management Deadlines**

The following deadlines strictly apply unless otherwise modified by the Court:

| | **EVENTS** | **COMPLETION DEADLINE** |
|---|---|---|
| 1. | Service of Complaint | December 31, 2026; service under extension is only by court order. |
| 2. | Answer and/or initial motions/objections directed to the pleadings (i.e. to dismiss or strike) | 20 days after service |
| 3. | Initial Discovery Disclosures | 60 days after service |
| 4. | Amendment of pleadings/Adding parties | May 10, 2027 |
| 5. | Resolution of all motions/objections directed to the pleadings and pleadings closed | June 29, 2027 |
| 6. | Disclosure of Expert Witness(es) | October 25, 2027 |
| 7. | Disclosure of Rebuttal Experts | November 24, 2027 |
| 8. | Inspections, Expert Witness Depositions and Compulsory Examinations completed | February 12, 2028 |
| 9. | File Witness & Exhibit Lists | February 22, 2028 |
| 10. | Completion of Discovery relating to Summary Judgment and *Daubert* Motions | February 12, 2028 |
| 11. | File and Serve Motion(s) for Summary Judgment and *Daubert* Motions | February 22, 2028 |
| 12. | File Rebuttal Witness Lists | March 13, 2028 |
| 13. | Completion of All Discovery | April 2, 2028 |
| 14. | Pre-Trial Meet & Confer | April 12, 2028 |
| 15. | File all Pre-Trial Motions (i.e. Motions in Limine) | April 12, 2028 |
| 16. | Deadline for Mediation | May 2, 2028 |

NOT A CERTIFIED COPY

| | | |
|---|---|---|
| 17. | Deposition Designations | May 2, 2028 |
| 18. | File Joint Pre-Trial Stipulation | May 2, 2028 |
| 19. | Deadline to hear ALL Motions | May 7, 2028 |
| 20. | Jury Instructions and Verdict Form | May 9, 2028 |
| 21. | Calendar Call/Trial Ready Date | May 12, 2028 |
| 22. | Trial Period | Begins on the docket associated with the above Calendar Call date, as provided in Divisional Instructions or by court order. |

NOT A CERTIFIED COPY

**Note: If the above deadlines fall on a weekend or holiday, please refer to Fla. R. Gen. Prac. & Jud. Admin. 2.514.**

The parties are expected to actively manage the case and to confer early and often to ensure compliance with the Florida Rules of Civil Procedure and this order in timely resolving this case. **The parties are encouraged to file, meet, and make disclosures prior to the deadlines imposed above, in order to ensure compliance with the Rules requiring timely disposition of cases**.

The Court may, at any time, modify this Order by entry of: 1) an Amended Trial Order, 2) an Amended Case Management Order; or 3) any other Order intended to establish a modified case resolution schedule, any of which shall supersede the deadlines set forth in this Order. The Court reserves the authority to expedite the trial setting and amend pretrial deadlines accordingly. The Court further retains its discretion to modify any provision herein.

C. **Motions**

Unless court approval is required to set a particular motion for hearing, the parties must expeditiously set all contested motions for hearing. All non-dispositive motions, including motions directed to the pleadings, must be scheduled for hearing within **five (5) days** of filing. Parties shall schedule the hearing for the first vacancy on the Court's docket when all parties are available. **Failure to schedule a hearing within five (5) days may result in the Court deeming the motion(s) abandoned without further notice or hearing**.

The moving party shall be the party responsible for securing the presence of a court reporter. The moving party shall advise all parties in writing in advance of the hearing or trial of the arrangements made, if any, for the presence of a court reporter, or shall advise all parties in advance of the hearing or trial that the moving party has chosen not to obtain a court reporter.

Before filing a non-dispositive motion, the movant must follow Rule 1.202 and Local Rule 4. Failure to comply with the requirements of Rule 1.202 and Local Rule 4 may result in sanctions against the non-compliant party.

The requirements of Rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel *(pro se)*.

D. **Extensions, Modifications and Continuances**

**Extensions of Deadlines Other than Trial/Calendar Call: All motions to extend deadlines must be filed prior to the deadline**. Untimely motions will be denied absent compelling circumstances and a showing of good cause.

The parties must strictly follow Rule 1.200(e) and Administrative Order 3.110 (as amended) when filing motions for extension or modification. If the parties agree, and the extension will not prevent the case from being trial ready by the original Calendar Call date, the parties may file a motion and submit for the Court's consideration an agreed order or proposed Amended DCMO, as applicable under Rule 1.200(e)(1). The motion shall identify which deadlines are requested to be extended and the basis for the request. Each agreed order or Amended DCMO must contain agreed-upon dates for all remaining deadlines and confirm that the Calendar Call date remains as previously set. The Court will accept the amendment or direct the parties to set a DCM Conference. **Agreements to extend the dates for the filing of Summary Judgment and *Daubert* motions, and for completion of discovery, must be set for hearing, and the parties must be prepared to address how the proposed extension will not affect the Calendar Call date**.

**Motions to Continue Trial:** Motions to continue trial must strictly comply with Rule 1.460. **Motions to continue are disfavored and will rarely be granted and then only upon good cause shown. Successive continuances are highly disfavored. Lack of due diligence in preparing for trial is not grounds to continue the case**. Failure to timely complete discovery and/or file a motion for summary judgment shall not be grounds to continue the trial.

E. **DCM Conferences**

If any party is unable to meet the deadlines set forth in this Order for any reason, including unavailability of hearing time, the affected party must promptly set a DCM conference as described in Administrative Order 3.110 (as amended), identifying the hearing time requested and the pending motion(s). DCM conferences shall be scheduled through online scheduling (OLS) on either the Court's: 1) DCM - Case Management Conference docket; or 2) Uniform Motion Calendar, in accordance with Divisional Instructions.

II. **UNIFORM PRE-TRIAL PROCEDURE**

A. TIMELY SERVICE AND DEFAULTS

Parties must make reasonable efforts to ensure speedy service. Each return of service must be separately filed for each defendant. If service is not completed within ninety (90) days, an Order will be issued directing service by the **ONE-HUNDRED**

NOT A CERTIFIED COPY

**TWENTY (120) DAY DEADLINE**. Failure to comply will result in dismissal of the case or party for lack of service. Any motions to extend the deadline for service must specify why service could not have been effectuated, what is being done to effectuate service and request only that amount of additional time necessary.

If all defendants become defaulted, a Motion for Default Final Judgment along with supporting documentation must be filed within **thirty (30) days** of the last default and set for hearing at the next available hearing time.

B. INITIAL DISCLOSURES

Within **sixty (60) days after service** on a defendant, and except as exempted by Rule 1.280(a)(2) or as ordered by the court, each party must, without awaiting a discovery request, provide to the other parties initial discovery disclosures in compliance with Rule 1.280(a), unless privileged or protected from disclosure.

C. EXHIBITS AND WITNESSES

No later than **eighty (80) days before Calendar Call**, each party shall file and exchange lists of all trial exhibits, names, and addresses of all trial witnesses. Each party's witness list must include a brief description of the substance and scope of the testimony to be elicited from each witness. Both sides must cooperate in the scheduling of all witness depositions.

Each party's exhibit list shall include each exhibit separately numbered and identified. Generic or prospective designations are not allowed (e.g. insurer's file, documents to be produced, etc.). Each party shall provide for a reasonable time and place for the other parties to review and copy the exhibits.

D. EXPERT WITNESS DISCLOSURES

In addition to the names and addresses of each expert retained to formulate an expert opinion, as well as any hybrid fact/expert witnesses, no later than **two-hundred (200) days before Calendar Call**, the parties must provide:

1. The subject matter about which the expert will testify;
2. The opinions to which the expert will testify;
3. A summary of the grounds and facts for each opinion; and
4. A copy of the expert's curriculum vitae.

**Each expert will be limited to testifying only about those matters which have been fully disclosed.**

Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. All parties shall cooperate in the scheduling of expert depositions.

NOT A CERTIFIED COPY

The parties shall also provide answers to standard form expert interrogatories. All reports or other data compiled by each disclosed expert which are intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to all opposing parties at least 72 hours prior to the date of the scheduled deposition.

**Rebuttal/Responsive Experts**

No later than **one-hundred seventy (170) days before Calendar Call**, the parties shall provide opposing counsel with a written list with the names and addresses of all rebuttal/responsive expert witnesses intended to be called at trial and only those rebuttal/responsive expert witnesses listed shall be permitted to testify. The parties shall also furnish opposing counsel with expert reports or summaries of all rebuttal/responsive expert witnesses' anticipated testimony to the same extent as the expert disclosure requirement above.

Within **thirty (30) days** following this disclosure, the parties shall make their rebuttal/responsive experts available for deposition. The experts' depositions may be conducted without further Court order.

E. REBUTTAL FACT WITNESSES AND EXHIBITS

No later than **sixty (60) days before Calendar Call**, the parties must file and exchange lists of names and addresses of all rebuttal fact witnesses and lists of any rebuttal exhibits.

F. ADDITIONAL EXHIBITS, WITNESSES OR OBJECTIONS

At trial, the parties will be strictly limited to exhibits and witnesses previously disclosed absent agreement of the parties or order of the Court upon good cause shown. A party desiring to use an exhibit or witness discovered after counsel have conferred must immediately furnish the Court and other counsel with a description of the exhibit or with the witness' name and address and the expected subject matter of the witness' testimony, together with the reason for the late discovery of the exhibit or witness. Failure to reserve objections constitutes a waiver. Use of the exhibit or witness may be allowed by the Court for good cause shown.

G. DEPOSITION DESIGNATIONS

No later than **ten (10) days prior to Calendar Call**, each party must serve deposition designations, or portions of depositions, each intends to offer as testimony. No later than **eight (8) days prior to Calendar Call**, each opposing party is to serve any counter (or "fairness") designations, together with objections to the depositions, or portions thereof, originally designated. No later than **five (5) days before Calendar Call**, each party must serve any objections to counter-designations served by an opposing party.

NOT A CERTIFIED COPY

H. DISCOVERY COMPLETION

All discovery relating to Summary Judgment and *Daubert* motions must be completed no later than **ninety (90) days prior to Calendar Call**.

All discovery must be completed no later than **forty (40) days prior to Calendar Call**.

Rulings as to admission on late discovery will be made on a case by case basis. Absent unforeseeable, exigent circumstances, the failure to complete discovery is not grounds for a continuance.

I. COUNSEL MEETING AND PRE-TRIAL STIPULATION

Counsel or the parties, if not represented by counsel, shall meet in person at a mutually convenient time and place no later than **thirty (30) days before Calendar Call** to discuss settlement, simplify the issues, and stipulate to as many facts and issues as possible, and prepare a Pre-Trial Stipulation in accordance with this paragraph.

It shall be the duty of Plaintiff's counsel to see that the Pre-Trial Stipulation is drawn, executed by counsel for all parties, and filed with the Clerk no later than **ten (10) days prior to Calendar Call. UNILATERAL PRE-TRIAL STIPULATIONS ARE DISALLOWED, UNLESS APPROVED BY THE COURT AFTER NOTICE AND HEARING**. If a party does not receive a substantive response to a proposed Pre-Trial Stipulation after good faith effort, such party shall file a unilateral Pre-Trial Stipulation with a certification of all efforts that were made to confer with the opposing party. Counsel for all parties are charged with good faith cooperation in preparing the Pre-Trial Stipulation, and the parties shall make exhibits available for inspection and copying. Failure to cooperate in preparing the Pre-Trial Stipulation may result in striking pleadings, witnesses, or exhibits.

The Pre-Trial Stipulation must contain the following in separately numbered paragraphs:

1. Names and contact information of attorneys to try case.
2. A list of all pending motions requiring action by the Court. **Motions not listed are deemed abandoned or waived**.
3. A statement of estimated trial time, including the total number of trial days anticipated, and the time needed per side for (1) jury selection, (2) opening arguments, (3) each case in chief, and (4) closing arguments.
4. **Statement of the Facts:** A concise statement of the facts in an impartial, easily understandable manner which may be read to the jury.
5. **Statement Facts and Agreed Rules of Law:** A list of any stipulated facts requiring no proof at trial and any agreed rules of law.
6. **Statements of Disputed Law & Fact:** A statement of disputed issues of law

NOT A CERTIFIED COPY

and fact that are to be tried.

7. **Witness Lists:** Parties must attach their previously filed Witness Lists, including rebuttal or impeachment witnesses. If any party objects to any witness, such objections must be stated in the Stipulation, setting forth the grounds with specificity. At trial, all parties will be strictly limited to witnesses properly and timely disclosed. Only those witnesses listed by NAME will be permitted to testify at trial.
8. **Exhibit Lists:** Parties must attach their previously filed Exhibit Lists. All exhibits to be offered in evidence at trial must have been made available to opposing counsel for examination. Only those exhibits listed may be offered in evidence. If any party objects to the introduction of any such exhibit, such objection must be stated in the Pre-Trial Stipulation, setting forth the grounds with specificity. Demonstrative exhibits (e.g. PowerPoints, charts, enlargements of exhibits) to be used at a Jury Trial must be displayed to all counsel before being shown to the jury. All exhibits must be pre-marked and numbered consistent with Clerk guidelines.
9. **Jury Instructions:** Counsel must identify all agreed-upon standard jury instructions and all special instructions. Any objections or disputed jury instructions must be attached and identified as to the party that proposed the instruction [indicated in redline/track changes]. Copies of all agreed-upon instructions or disputed instructions must be attached to the Stipulation as one document, redlined as necessary, along with copies of supporting statutory citations and/or case law.
10. **Verdict Forms:** The jury verdict form must be attached and designated as agreed to or disputed.
11. **Peremptory Challenges:** State the number of peremptory challenges for each party.
12. Other agreements or issues for trial, if any.

Failure to file a Joint Pre-Trial Stipulation as provided above may result in Court-imposed sanctions, including dismissal or default without further notice of the Court.

NOT A CERTIFIED COPY

J. <u>MOTIONS</u>

**Summary Judgment and *Daubert* Motions** must be filed at least **eighty (80) days before Calendar Call**. The parties shall confer regarding summary judgment motions to ensure discovery necessary for those motions is completed in advance of their filing.

**ALL MOTIONS** (including dispositive motions and motions in limine), deposition objections, and expert challenges must be filed, served and heard at least **five (5) days before Calendar Call**.

K. <u>PRE-MARKING EXHIBITS</u>

Prior to trial, each party is to mark for identification all exhibits in accordance with

the guidelines of the Clerk of Court. Instructions and templates may be found at: www.mypalmbeachclerk.com/departments/courts/evidence-guidelines/civil-evidence.

L. ENLARGED JURY PANELS

Local Rules require advance approval of the Chief Judge and Jury Office for jury panels exceeding 31 jurors. **To ensure enough jurors are available, requests for enlarged jury panels must be resolved at least six (6) months before Calendar Call**. Failure to timely request an enlarged panel may result in Court-ordered sanctions, including a limitation on peremptory challenges.

M. INTERPRETERS

Unless otherwise ordered by the Court, it shall be the responsibility of the party who needs the services of an interpreter, whether for a litigant or for a witness, to have a competent interpreter present in court.

N. JURY INSTRUCTIONS AND VERDICT FORM

A joint set of proposed jury instructions and a proposed verdict form must be provided to the court no less than **three (3) days before Calendar Call** in a printed form appropriate for submission to the jury and in Microsoft Word format.

If there is an objection to a proposed instruction, the instruction should be followed by the specific objection, a brief explanation, and a citation to legal authority. If an alternative or modified instruction is proposed, it should follow the instruction it is intended to replace.

O. UNIQUE QUESTIONS OF LAW

Prior to calendar call, counsel for the parties are directed to exchange and simultaneously submit to the Court appropriate memoranda with citations to legal authority in support of any unique legal questions that may reasonably be anticipated to arise during the trial.

NOT A CERTIFIED COPY

## III. MEDIATION

A. MEDIATION REQUIRED

1. All parties are required to participate in mediation.
2. The attendance of counsel who will try the case and representatives of each party with full authority to enter into a complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits must attend.
3. At least one week prior to a scheduled mediation conference, all parties are to file with the mediator a brief, written summary of the case containing a list of

issues as to each party.

4. All communications at the mediation conference are privileged consistent with Florida Statutes sections 44.102 and 90.408.
5. The mediator has no power to compel or enforce a settlement agreement. If a settlement is reached, it is a responsibility of the attorneys or parties to reduce the agreement to writing and to comply with Florida Rule of Civil Procedure 1.730(b), unless waived.

B. MEDIATION SCHEDULING

**The Plaintiff's attorney is responsible for scheduling mediation**. The parties should agree on a mediator. If they are unable to agree, any party may apply to the Court for appointment of a mediator in conformity with Rule 1.720 (j), Fla. R. Civ. P. The lead attorney or party must file and serve on all parties and the mediator a Notice of Mediation giving the time, place, and date of the mediation and the mediator's name.

C. COMPLETION OF MEDIATION BEFORE CALENDAR CALL

Completion of mediation prior to calendar call is a prerequisite to trial and must be completed no later than **ten (10) days prior to Calendar Call**. If mediation is not conducted, or if a party fails to participate in mediation, the Court may impose sanctions, including monetary sanctions, striking pleadings and witnesses, and dismissal or default without further notice of the Court.

D. OPPOSITION TO MEDIATION

Any party opposing mediation may proceed under Florida Rule of Civil Procedure 1.700(b).

IV. **NON-COMPLIANCE**

**NON-COMPLIANCE WITH ANY PORTION OF THIS ORDER MAY RESULT IN THE STRIKING OF THE PLEADINGS, WITNESSES, OR EXHIBITS, ENTRY OF DEFAULT OR DISMISSAL WITHOUT FURTHER NOTICE OF THE COURT, OR IMPOSITION OF SUCH OTHER SANCTIONS AS IS JUST AND PROPER.**

**DONE AND ORDERED** in West Palm Beach, Palm Beach County, Florida.

50-2026-CA-009933-XXXA-MB 09/04/2026
Danielle Sherriff Judge
15TH JUDICIAL CIRCUIT
ADMINISTRATIVE OFFICE OF THE COURT

50-2026-CA-009933-XXXA-MB 09/04/2026
Danielle Sherriff
Judge

NOT A CERTIFIED COPY

A copy of this Order has been furnished to the Plaintiff. The Plaintiff shall serve this Order to the Defendant(s) in compliance with Administrative Order 3.110 (amended).

# ADA NOTICE

This notice is provided pursuant to Administrative Order No. 2.207-5/26

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**"Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con ADA Coordinator, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."**

**"Si ou se yon moun ki enfim ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte ADA Coordinator, kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."**

NOT A CERTIFIED COPY

Filing # 257488721 E-Filed 09/21/2026 12:15:28 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DOUGLAS PETERS, TRUSTEE OF THE DOUGLAS PETERS DECLARATION OF TRUST DATED MAY 6, 2004, DOUGLAS PETERS, IRWIN PETERS,

CASE NO.: 2026-CA-009933XXXAMB

Plaintiffs,

v.

COMERICA BANK, ONITY MORTGAGE CORPORATION,

Defendant(s).

_______________________________________ /

**NOTICE OF APPEARANCE AS COUNSEL AND**
**NOTICE OF DESIGNATION OF E-MAIL ADDRESSES**

The law firm of Baker, Donelson, Bearman, Caldwell and Berkowitz, PC hereby gives notice of the appearance of Eve A. Cann and Matthew R. Feluren as counsel on behalf of Defendant, Onity Mortgage Corporation and requests that copies of all pleadings, notices, orders, and other papers in this cause be henceforth provided to the undersigned.

The undersigned counsel, pursuant to Florida Rule of Judicial Administration 2.516, hereby designates e-mail addresses for service of all orders, process, pleadings and other documents in this matter:

As to Eve A. Cann:
Primary: ecann@bakerdonelson.com
Secondary: lbettencourt@bakerdonelson.com
nleone@bakerdonelson.com

As to Matthew R. Feluren:
Primary: mfeluren@bakerdonelson.com
Secondary: nleone@bakerdonelson.com
FLLService@bakerdonelson.com

Submitted this 21st day of September, 2026.

NOT A CERTIFIED COPY

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, Onity Mortgage Corporation*

By: */s/ Matthew R. Feluren*
Eve A. Cann
Florida Bar No. 40808
ecann@bakerdonelson.com
Matthew R. Feluren
Florida Bar No. 85879
mfeluren@bakerdonelson.com

NOT A CERTIFIED COPY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 21, 2026, a true and correct copy of the foregoing was filed electronically and was sent by e-mail from the Florida Courts' E-Filing Portal system and by U.S. Mail on all counsel or parties of record listed below:

Gregory R. Elder, Esq.
**Law Offices of Gregory R. Elder, PLLC**
2300 N.W. Corporate Boulevard, Suite 215
Boca Raton, FL 33431
Phone: (305) 546-1061
gelderlaw@gmail.com
*Counsel for Plaintiff*

Jason Evans, Esq.
**Law Offices of Jason Evans, LLC d/b/a Evans Law**
2300 N.W. Corporate Boulevard, Suite 215
Boca Raton, FL 33431
Phone: (561) 832-8288
jason@evanslawfl.com
*Counsel for Plaintiff*

Comerica Bank
c/o Registered Agent: Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach, FL 33408

*/s/ Matthew R. Feluren*
Matthew R. Feluren

Filing # 257488721 E-Filed 09/21/2026 12:15:28 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DOUGLAS PETERS, TRUSTEE OF THE DOUGLAS PETERS DECLARATION OF TRUST DATED MAY 6, 2004, DOUGLAS PETERS, IRWIN PETERS,

CASE NO.: 2026-CA-009933XXXAMB

Plaintiffs,

v.

COMERICA BANK, ONITY MORTGAGE CORPORATION,

Defendant(s).

______________________________________ /

NOT A CERTIFIED COPY

**DEFENDANT, ONITY MORTGAGE CORPORATION'S *AGREED* MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

COMES NOW, Defendant, Onity Mortgage Corporation ("Defendant"), by and through undersigned counsel, respectfully moves this Honorable Court pursuant to Florida Rule of Civil Procedure 1.090(b), for entry of an order enlarging time to file a response to Plaintiffs, Douglas Peters, Trustee of the Douglas Peters Declaration of Trust Dated May 6, 2004, Douglas Peters, and Irwin Peters' (collectively hereinafter, the "Plaintiffs") Complaint with Jury Demand (the "Complaint"). In support, Defendant notes that the relief requested herein is *agreed*, and states as follows:

1. On September 2, 2026, the Plaintiffs filed this action. *See* Complaint [DIN 3].

2. The Complaint was served on Onity on September 4, 2026, and Defendant's response to the Complaint is due on or before September 24, 2026.

3. The undersigned counsel was recently retained to represent the Defendant in connection with this action and requires additional time to review pleadings and relevant records and discuss the dispute and its defenses with their client.

4. Accordingly, to allow time for review and preparation of a response to the Complaint, Onity respectfully requests that the Court extend its response date until Monday, October 26, 2026.

5. Neither the parties nor the Court will be prejudiced by an extension of time to respond, as this is a relatively new action with no affected deadlines.

6. The undersigned counsel represents that the instant motion is being filed in good faith and not for the purpose of delay.

**Certificate of Conferral Pursuant to Fla. R. Civ. P. 1.202**

I certify that prior to filing this motion, I conferred with Plaintiffs' counsel, by email on September 18, 2026, who confirmed Plaintiffs are in agreement to the relief requested in this Motion.

**WHEREFORE**, the Defendant, Onity Mortgage Corporation, respectfully requests that this Honorable Court grant the instant Motion, enter an order granting an extension up to and including October 26, 2026 for Defendant to respond to Plaintiffs' Complaint, and granting any and all other relief this Court deems just and proper.

NOT A CERTIFIED COPY

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, Onity Mortgage Corporation*

By: */s/ Matthew R. Feluren*
Eve A. Cann
Florida Bar No. 40808
ecann@bakerdonelson.com
Matthew R. Feluren
Florida Bar No. 85879
mfeluren@bakerdonelson.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 21, 2026, a true and correct copy of the foregoing was filed electronically and was sent by e-mail from the Florida Courts' E-Filing Portal system and by U.S. Mail on all counsel or parties of record listed below:

Gregory R. Elder, Esq.
**Law Offices of Gregory R. Elder, PLLC**
2300 N.W. Corporate Boulevard, Suite 215
Boca Raton, FL 33431
Phone: (305) 546-1061
gelderlaw@gmail.com
*Counsel for Plaintiff*

Jason Evans, Esq.
**Law Offices of Jason Evans, LLC d/b/a Evans Law**
2300 N.W. Corporate Boulevard, Suite 215
Boca Raton, FL 33431
Phone: (561) 832-8288
jason@evanslawfl.com
*Counsel for Plaintiff*

Comerica Bank
c/o Registered Agent: Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach, FL 33408

*/s/ Matthew R. Feluren*
Matthew R. Feluren

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DOUGLAS PETERS, TRUSTEE OF THE DOUGLAS PETERS DECLARATION OF TRUST DATED MAY 6, 2004, DOUGLAS PETERS, IRWIN PETERS,

Plaintiffs,

v.

COMERICA BANK, ONITY MORTGAGE CORPORATION,

Defendant(s).

CASE NO.: 2026-CA-009933XXXAMB

NOT A CERTIFIED COPY

**AGREED ORDER on DEFENDANT'S AGREED motion FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINT**

**THIS CAUSE** came before the Court on Defendant, Onity Mortgage Corporation's ("Defendant") Motion for Extension of Time to Respond to Plaintiffs, Douglas Peters, Trustee of the Douglas Peters Declaration of Trust Dated May 6, 2004, Douglas Peters, and Irwin Peters' (collectively hereinafter, the "Plaintiffs") Complaint with Jury Demand, and the Court, having reviewed the papers on file, having been advised of the agreement of the Parties, and being otherwise fully advised in the premises, the Court hereby:

**ORDERs AND ADJUDGEs** as follows:

1. The Defendant's Motion for Extension of Time to Respond to Plaintiffs' Complaint is **GRANTED**.
2. Defendant shall respond to Plaintiffs' Complaint on or before October 26, 2026.

**DONE AND ORDERED** in Chambers at Palm Beach County, Florida.

50-2026-CA-009933-XXXA-MB 09/25/2026
Danielle Sherriff Judge
15TH JUDICIAL CIRCUIT
ADMINISTRATIVE OFFICE OF THE COURT

50-2026-CA-009933-XXXA-MB 09/25/2026
Danielle Sherriff
Judge

Copies provided to all parties of record.